Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
William C. Wright (WW 2213)
bwright@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391

Brian Igel (BI 4574)
bigel@bilawfirm.com
BELLIZIO + IGEL
One Grand Central Place
305 Madison Avenue, 40th Floor
New York, New York 10165
Telephone:    (212) 873-0250
Facsimile:    (646) 395-1585
*Attorneys for Plaintiff*
*Off-White LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFF-WHITE LLC,<br>*Plaintiff*<br><br>v.<br><br>A445995685, ANKOU, ARIESEE, BAINAOHUI621@163.COM, BAOWENBEI, BEAUTIFUL AREA, BEIBEIKEJIYOUXIANGONGSI, BILLY CRYSTAL SHOP, BIN-Z, BLUEREDFASHION, BONNIE_HE, BRILLIANCE CO., LTD., BUDGET STORE, CACO, CAOZHI, CAVS, CHACHASHOP2, CHENG'S BROTHER, CSHUI, DJMRZHANG, DREAM-XIE, DUANFANFAN, DUODUOSHOES, | CIVIL ACTION No. ___<br><br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

DUYINGFEN, EASY BUY_69, EDIT, FASHION HOUSE CO., LTD., FASHION1900, FATEGRANDNESS, FEIFANMAOYI, FEIHONG TECHNOLOGY CO., LTD, FELLINGPU, FLASH TOP, FLORENCEFASHION, FUJIAN XINCHENG CORPORATION, FUJIANANXICOLTD, FUXIAOSEN, GAGALADY_LI, GAGAR, GAME DEVIL, GAO GAO SHOPPING, GAOFEN8730, GAZEBO, GOGOGOSHOPIT, GOWNS, GRACE_K, GREAT WELL-OFF TRADE CO, LTD, HAPPYTIMEYA, HEIDAO, HELLO1, HENENG, HEXIAOLI, HIGH LANDS, HOOK, HOTOP, HUANGLIANGFENG, HUKIO INTERNATIONAL, HUQIU AISHANG WEDDING DRESSES & EVENING DRESSES STORE, I DRESS MY PANTS, IT'S UNBELIEVABLE, JHEER, JOYWEDDING2016, JUMN, KELVIN'S DREAM, KIKIT, KINDLY SMILE, KUNGE CO,LTD, LAST ORDER, LASTED, LCON, LI LI LOVE SHOP, LIANXIN, LIJUN_WU, LINGFASHION, LISA'S CROCHET, LIUGANGHUI, LOVE OF GOD, LOVE OF LOVER, LOVELH, LUCKY CHAMPION, LUCKY PAN, LUINGTING, LUQILIN5922, LXPWUQ, M.KILING, MAN'S WORLD, MARVELLOUS WORLD, MEANS ZORE, MEETGT, MEILIYIJIA, MING_CLOTHING, MIYAVI, MORDERN LIFE INTERNATIONAL, MOSKUSHAMN, NEW SKY NEW LIFE, OFF WHITE NEW SHOP, OHEIYOUFASHION, ONSALESTORE886, PANGXIANSENCHAOPAIDAMANANZHUA NGDIAN, PEACEFUL LIFE, PERSONALIZED CLOTHING, POLY FAMOUS TRADING CO LTD, PROFESSIONAL, QIUMIN_FASHION, QIUXIULING, QIXIAORAN28, QQ_200815@163.COM, QUARTERBACK, RUILY, SANMATIN, SERENA ANGELCITY, SHENJINQI, SHENZHENOUAILICOLTD, SHISHANGPINPAI, SHOP8, SHOPPER'S PARADISE, SIX DAYS, SPRING WIND, SRUER COSTUME, SU_FASHION, SUMAIL BUSINESS GROP, SUMMER TIME GONE,

SUNNY SEE, SUNXIAOULI, SWEET-WIND, THE MEN'S WORLD, THE OLNY, TIMOTHY5566, TOP-ANNY, TRAVELERS, TRENDY_WORLD, VINTAGE COLLECTIONS, WANG STORE ONE, WEBBER123, WEYMOUTH, WHITE OFF SHOP, WONDERLIST, WUHANXINGDAHENGJIASHANGMAOYOU XIANGONGSI, WY STORE, XIAODIANPUYOUNI, XPRESS SHARE, XSHIN, XUNLONGS, YA TOU HE, YABAR, YAOJUNMAOMALL, YEONLY YOU, YIJIANHUI, YIWU E-COMMERCE LIMITED, YUHUIYU654, YUNYUNSHOP, YUSANX, YUXIAOLI, ZBY0913, ZERO ZONE, ZHAOJIQUAN, ZHEJIANGAIZESIMAOYIYOUXIANGONGSI, ZHIMATANG, ZHOUJIEYUE0909, ZHUANSHUZHIYI, AND ZUOZUIMEIZIJI,

*Defendants*

Plaintiff, Off-White LLC ("Off-White" or "Plaintiff"), a limited liability company organized and existing under the laws of the State of Illinois, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

1.    This action involves claims for trademark infringement of Off-White's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 et seq.; counterfeiting of Off-White's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c); trademark infringement of Plaintiff's unregistered trademark in violation of 15 U.S.C. § 1125; false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)) and related state and common law claims (the "Action"), arising from Defendants a445995685, ankou, Ariesee, bainaohui621@163.com, baowenbei, Beautiful Area,

beibeikejiyouxiangongsi, billy crystal shop, Bin-Z, blueredfashion, bonnie_he, Brilliance Co., Ltd., Budget store, Caco, caozhi, CAVS, chachashop2, cheng's brother, cshui, DJMrZhang, Dream-Xie, duanfanfan, duoduoshoes, duyingfen, Easy Buy_69, Edit, Fashion House Co., Ltd., fashion1900, fategrandness, feifanmaoyi, Feihong Technology Co., Ltd, fellingpu, Flash Top, florencefashion, Fujian xincheng corporation, fujiananxicoltd, FuXiaoSen, gagalady_li, Gagar, Game Devil, gao gao shopping, gaofen8730, gazebo, gogogoshopit, GOWNS, Grace_K, Great Well-off Trade Co, LTD, happytimeya, Heidao, hello1, Heneng, HeXiaoLi, high lands, hook, Hotop, huangliangfeng, hukio international, Huqiu Aishang Wedding Dresses & Evening Dresses Store, I dress my pants, It's unbelievable, JHEER, joywedding2016, jumn, Kelvin's Dream, KIKIT, Kindly Smile, KUNGE Co,ltd, last order, Lasted, lCON, Li Li love shop, lianxin, lijun_wu, LingFashion, Lisa's Crochet, liuganghui, Love of God, Love of Lover, LoveLH, Lucky champion, Lucky pan, luingting, luqilin5922, lxpwuq, m.kiling, man's world, Marvellous World, means zore, MeetGT, meiliyijia, ming_clothing, miyavi, Mordern life international, moskushamn, New Sky New Life, off white new shop, oheiyoufashion, onsalestore886, pangxiansenchaopaidamananzhuangdian, peaceful life, Personalized Clothing, Poly Famous Trading Co Ltd, Professional, qiumin_fashion, qiuxiuling, qixiaoran28, qq_200815@163.com, Quarterback, ruily, sanmatin, serena angelcity, shenjinqi, shenzhenouailicoltd, shishangpinpai, shop8, Shopper's Paradise, Six days, spring wind, SRUER Costume, su_fashion, SUMAIL BUSINESS GROP, summer time gone, Sunny See, sunxiaOULI, sweet-wind, the men's world, the olny, Timothy5566, top-anny, Travelers, trendy_world, vintage collections, wang store one, webber123, Weymouth, white off shop, wonderlist, wuhanxingdahengjiashangmaoyouxiangongsi, WY Store, xiaodianpuyouni, Xpress Share, XSHIN, xunlongs, Ya Tou He, YaBar, yaojunmaomall, yeonly you, yijianhui, Yiwu e-commerce

Limited, yuhuiyu654, YunYunShop, yusanx, yuxiaoli, ZBY0913, Zero Zone, zhaojiquan, zhejiangaizesimaoyiyouxiangongsi, zhimatang, zhoujieyue0909, zhuanshuzhiyi, and zuozuimeiziji (hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of Off-White's Marks (defined infra), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, infringing versions of the Off-White Products (as defined infra).

## JURISDICTION AND VENUE

2.     Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition; and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.     Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this

Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' infringing actions caused injury to Off-White in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

a.  Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Wish (as defined infra) as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view the one or more of Defendants' Merchant Storefronts (as defined infra) that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined infra) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.  Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are

held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.   Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S., which make up significant percentages of Defendants' total revenues (which are estimated, in several cases, to be in the millions of dollars).

d.   Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e.   Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f.   Upon information and belief, Defendants are aware of Off-White, its Off-White Products (as defined *infra*) and Off-White Marks (as defined *infra*) and that their illegal counterfeiting and infringing actions, alleged herein, are likely to cause injury to Off-White in the U.S., in New York and in this judicial district specifically, as Off-White conducts substantial business in New York.

4.   Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in this judicial district.

## THE PARTIES

5.      Plaintiff Off-White LLC is a limited liability company organized and existing under the laws of the State of Illinois, with an address of c/o Bellizio + Igel PLLC, 305 Madison Avenue, New York, NY 10165.

6.      Upon information and belief, Defendants are merchants on the Wish.com online marketplace platform, which, upon information and belief, is owned by ContextLogic, Inc., a Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San Francisco, CA 94104, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Off-White and Its Well-Known Consumer Products

7.      Off-White, launched in or about 2013, is the owner of a young, successful and high-end lifestyle streetwear line of men's and women's apparel, as well as accessories, jewelry, furniture and other ready made goods (collectively, "Off-White Products") which are distributed through various channels of trade in the United States and abroad.  Images of the Off-White Products are attached hereto as **Exhibit A** and incorporated herein by reference.

8.      The Off-White Products are marketed under the trademarks Off-White™ and Off-White c/o Virgil Abloh™ ("Off-White Brand").  In particular, the Off-White Brand has been recognized for its distinctive graphic and logo-heavy apparel designs, and specifically, a unique design mark comprised of alternating parallel diagonal lines ("Off-White Diagonal Design") and a unique design mark comprised of two intersecting dual-sided arrows ("Off-White Arrow Design"). Since at least as early as 2013, the Off-White Diagonal Design has been, and currently still is, applied to the Off-White Products themselves, and since at least as early as 2016, the Off-White Arrow Design has been, and currently still is, applied to the Off-White Products themselves

8

(collectively, "Off-White Trade Dress").  The Off-White Trade Dress is also applied to tags, labels, containers, packaging and displays for the Off-White Products. True and correct photographs of a hang tag, interior labels and Off-White Products featuring the Off-White Brand and Off-White Trade Dress are depicted below:

  

   



9.      The Off-White Products are sold at luxury retailers such as Barneys, Selfridges, and Bergdorf Goodman, as well as Off-White's boutiques located in prominent fashion epicenters

including London, Tokyo, Hong Kong, Seoul, Beijing, Shanghai, Toronto, Singapore and New York City.

10.     Since the launch of Off-White approximately five (5) years ago, the Off-White Brand and Off-White Products have been featured in numerous press publications, including, but not limited to, New York Magazine, GQ, W Magazine, Vogue and Business of Fashion.

11.     The Off-White Products typically retail for between $150 - $2,500.

12.     While Off-White has gained significant common law trademark and other rights in its Off-White Marks (as defined *infra*) and Off-White Products through use, advertising and promotion, Off-White has also protected its valuable rights by filing for and obtaining federal trademark registrations.

13.     For example, Off-White owns the U.S. Trademark Registration of , U.S. Trademark Registration Number 5,150,712 for a variety of products in Class 18 and Class 25



("Off-White Horizontal Diagonal Mark Registration") and the U.S. Trademark Registration of U.S. Trademark Registration Number 5,307,806, for a variety of products in Class 18 and Class 25 ("Off-White Vertical Diagonal Mark Registration") (collectively, "Off-White Diagonal Mark Registrations"). Additionally, Off-White owns the U.S. Trademark Registration of , U.S. Trademark Registration Number 5,387,983, for a variety of goods in Class 25 ("Off-White Arrow Mark Registration").  Off-White also applied for registration of the word mark "Off White C/O Virgil Abloh" for a variety of products in Class 25, which is covered by U.S. Trademark Serial

Application No. 85/911,895, with a constructive date of first use of March 25, 2013 (the "Off-White C/O Virgil Abloh Word Mark Application") (hereinafter, the Off-White Brand, Off-White Trade Dress, Off-White Diagonal Mark Registrations, Off-White Arrow Mark Registration and Off-White C/O Virgil Abloh Word Mark Application are collectively referred to as the "Off-White Marks"). True and correct copies of the registration for the Off-White Diagonal Mark Registrations, the Off-White Arrow Mark Registration and the application for the Off-White C/O Virgil Abloh Word Mark Application are attached hereto as **Exhibit B** and incorporated herein by reference.

14.     The Off-White Marks are currently in use in commerce in connection with the Off-White Products.  The Off-White Marks were first used in commerce on or before the dates of first use as reflected in the respective registration and application attached hereto as **Exhibit B**.

15.     The success of the Off-White Products is due in part to Off-White's marketing and promotional efforts.  These efforts include advertising and promotion through social media, Off-White's website (available at https://www.off---white.com/en/US) (the "Website"), retailer websites and other internet-based and print advertising, both domestically and abroad, including New York.

16.     Off-White's success is also due to its use of high quality materials and processes in making the Off-White Products.

17.     Additionally, Off-White owes a substantial amount of the success of the Off-White Products to its consumers and word-of-mouth buzz that its consumers have generated.

18.     Off-White's efforts, the quality of its Off-White Products, its marketing, promotions and distribution efforts, as well as the word-of mouth-buzz generated by its consumers, have made the Off-White Products and Off-White Marks prominently placed in the minds of the

public.  Retailers, retail buyers, consumers and members of the public have become familiar with Off-White Products and Off-White Marks and associate them exclusively with Off-White.

19.     As a result of such associations, Off-White and its Off-White Marks have acquired a valuable reputation and goodwill among the public.

20.     Off-White has gone to great lengths to protect its interests in and to the Off-White Products and Off-White Marks.  No one other than Off-White is authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Off-White Marks without the express written permission of Off-White.

### Wish and Defendants' User Accounts

21.     Wish.com is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[1] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish").

22.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Wish, like Defendants, are located in China.[2] As of May 2015, over 40 million items from 100,000 User Accounts were available on Wish.[3] Between June 2014 and May 2015, nearly 100 million distinct User Accounts became registered on Wish.[4] Currently, Wish claims a base of over 300 million users.[5] As one of the leaders of the worldwide e-commerce and

---

[1] *See* Armando Roggio, *Ecommerce Lessons from the Wish Shopping App*, PRACTICALECOMMERCE (Jan. 7, 2015), https://www.practicalecommerce.com/Ecommerce-Lessons-from-the-Wish-Shopping-App.
[2] *See* Greg Bensinger, *Wish, a Direct-From-China Shopping App, Lures Bargain Hunters*, WALL STREET JOURNAL (May 19, 2015), https://www.wsj.com/articles/wish-a-direct-from-china-shopping-app-lures-bargain-hunters-1431909072.
[3] *See id*.
[4] *See id*.
[5] *See* WISH.COM, https://www.wish.com/careers.

digital retail market, Wish has generated billions in sales worldwide.[6] Sales to the U.S. make up a significant percentage of the business done on Wish. For example, online sales account for 8.6% of all retail transactions in the U.S., and nearly 8% of online shopping done by teenagers was performed using Wish, which is second only to Amazon.com.[7] On Cyber Monday of 2017, Wish accounted for 6.2% of teenager spending.[8] Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S.[9]

23.    Wish aggressively uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S. For example, Wish is in the top-five largest advertisers on the aforementioned popular search engines and social media websites.[10] In 2015, Wish spent approximately $100 million on advertisements on Facebook alone.[11]

24.    As recently addressed in news reports,[12] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit

---

[6] *See* Connie Loizos, *Wish is Raising Again, and Giving Late-Stage Investors Protection*, TECHCRUNCH.COM (Oct. 28, 2016), https://techcrunch.com/2016/10/28/wish-is-raising-again-and-giving-late-stage-investors-protection/.

[7] *See* Deena M. Amato-McCoy, *Study: Teens Twice as Likely to Shop Online Than Adults*, CHAINSTOREAGE.COM (Oct. 16, 2017), https://www.chainstoreage.com/technology/study-teens-twice-likely-shop-online-adults/.

[8] *See* Marianne Wilson, *Teens hot on Black Friday, but cool on Cyber Monday*, CHAINSTORAGE.COM (Nov. 29, 2017), https://www.chainstoreage.com/real-estate/teens-hot-black-friday-cool-cyber-monday/.

[9] *See* Parmy Olson, *At $8.5 Billion, Shopping App 'Wish' Is Now Worth More Than Sears, Macy's and JC Penney Combined*, FORBES, https://www.forbes.com/sites/parmyolson/2017/09/20/wish-8-billion-funding-amazon/#c360ab961e1d.

[10] *See* SENSORTOWER, MOBILE ADVERTISING ATLAS, Q2 2017 REPORT, *available at* https://s3.amazonaws.com/sensortower-itunes/Quarterly+Reports/Sensor-Tower-Q2-2017-Ad-Intel-Data-Digest.pdf?=landing.

[11] *See* Jason Del Rey, *Meet Wish, the $3 Billion App That Could Be The Next Walmart*, RECODE (Dec. 28, 2015), https://www.recode.net/2015/12/28/11621724/meet-wish-the-3-billion-app-that-could-be-the-next-walmart.

[12] *See* Andi Sykes, *Specialized Wages Ware on Counterfeiters* (Dec. 9, 2016), http://singletrackworld.com/2016/12/specialized-wages-war-on-counterfeiters/.

products on Wish,[13] an astronomical number of counterfeit and infringing products are offered for sale and sold on Wish at a rampant rate.[14]

25.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Wish as well as potentially yet undiscovered additional online marketplace platforms.

26.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

**<u>Defendants' Wrongful and Infringing Conduct</u>**

27.     Particularly in light of Off-White's success, the Off-White Products, as well as the reputation they gained, Off-White and its Off-White Products have become targets for unscrupulous individuals and entities that wish to exploit the goodwill, reputation and fame that Off-White amassed in its Off-White Products and Off-White Marks, and Plaintiff investigates and enforces against such activities.

28.     As part of these efforts, Off-White retained New Alchemy Limited ("NAL"), a company that provides trademark infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on Wish.

---

[13] *See, e.g.*, *Specialized Bicycle Components, Inc. v. in-style1820, et al*., Civil Case No. 16-cv-62711 (S.D. Fl. Nov. 17, 2016) and *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov.1, 2017).

[14] *See* Tom Hoffarth, *Lakers' Wish List Cheapened by the Dozen*, DAILY NEWS (Sept. 22, 2017), http://www.dailynews.com/2017/09/22/hoffarth-lakers-wish-list-cheapened-by-the-dozen/.

29.     Through NAL's investigative and enforcement efforts, Off-White learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing the Off-White Marks and artwork that is confusingly or substantially similar to the Off-White Marks, and/or are identical or confusingly or substantially similar to the Off-White Products (collectively referred to as, the "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit C** attached hereto and incorporated herein by reference**.**

30.     Defendants are not, and have never been, authorized by Off-White or any of its authorized agents to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Off-White Products or to use the Off-White Works, or any marks or artwork that are confusingly or substantially similar to the Off-White Marks.

31.     Defendants' Counterfeit Products are nearly indistinguishable from the Off-White Products, only with minor variations that no ordinary consumer would recognize.

32.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in New York ("the New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit C** attached hereto and incorporated herein by reference.

33.    NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars through Wish's own payment processing services ("Wish Payment System"), or through accounts with the payment processing agency PayPal, Inc. ("PayPal"), and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit C** attached hereto and incorporated herein by reference.

34.    For example, depicted beneath on the left is an image of one of the Off-White Products which typically retails for $765.00.  Depicted beneath on the right is the listing for Defendant CAVS' Counterfeit Product ("CAVS Infringing Listing" and "CAVS Counterfeit Product," respectively). The CAVS Infringing Listings appears on Defendant CAVS' Merchant Storefront, https://www.wish.com/c/59d4aa93977da1319dceb8a6, and offers the CAVS Counterfeit Product for $41.00 per item, using, featuring and/or incorporating one or more of the Off-White Marks, or a confusingly similar mark, in the descriptions and/or product images in the body of the listing. Further, the CAVS Counterfeit Product is virtually identical to one of the Off-White Products and features and/or incorporates one or more of the Off-White Marks.  There is no question that the CAVS Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of the Off-White Products or that the CAVS Counterfeit Product is otherwise approved by or sourced from Off-White, thereby trading off the goodwill and reputation of Off-White by engaging in the unauthorized use of the Off-White Marks:

**Off-White Product**                    **Defendant's Infringing Listing**

                    

35.     By way of another example, depicted beneath on the left is an image of one of the Off-White Products which typically retails for $540.00.  Depicted beneath on the right is the listing for Defendant Fashion House Co., Ltd.'s Counterfeit Product ("Fashion House Co., Ltd. Infringing Listing" and "Fashion House Co., Ltd. Counterfeit Product," respectively). The Fashion House Co., Ltd. Infringing Listings appears on Defendant Fashion House Co., Ltd.'s Merchant Storefront, https://www.wish.com/c/5a06a091eceb082ec9cc039c, and offers the Fashion House Co., Ltd. Counterfeit Product for $22.00 per item, using, featuring and/or incorporating one or more of the Off-White Marks, or a confusingly similar mark, in the descriptions and/or product images in the body of the listing. Further, the Fashion House Co., Ltd. Counterfeit Product is virtually identical to one of the Off-White Products and features and/or incorporates one or more of the Off-White Marks.  There is no question that the Fashion House Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of the Off-White Products or that the Fashion House Co., Ltd. Counterfeit Product is otherwise approved by or

sourced from Off-White, thereby trading off the goodwill and reputation of Off-White by engaging

in the unauthorized use of the Off-White Marks:

**Off-White Product**

**Defendant's Infringing Listing**




36.     As another example, depicted beneath on the left is an image of one of the Off-

White Products which typically retails for $120.00.  Depicted beneath on the right is the listing for

Defendant cheng's brother's Counterfeit Product ("cheng's brother Infringing Listing" and

"cheng's brother Counterfeit Product," respectively). The cheng's brother Infringing Listing

appears      on      Defendant      cheng's      brother's      Merchant      Storefront,

https://www.wish.com/c/58626bd8b67faf4f930253dc, and offers the cheng's brother Counterfeit

Product for $10.00 per item, using, featuring and/or incorporating one or more of the Off-White

Marks, or a confusingly similar mark, in the descriptions and/or product images in the body of the

listing. Further, the cheng's brother Counterfeit Product is virtually identical to one of the Off-

White Products and features and/or incorporates one or more of the Off-White Marks.  There is no

question that the cheng's brother Counterfeit Product is designed to confuse and mislead

consumers into believing that they are purchasing one of the Off-White Products or that the

cheng's brother Counterfeit Product is otherwise approved by or sourced from Off-White, thereby trading off the goodwill and reputation of Off-White by engaging in the unauthorized use of the Off-White Marks:

| **Off-White Product** | **Defendant's Infringing Listing** |
|:---:|:---:|
|  |  |

37.     By dealing in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Off-White's exclusive rights in its Off-White Marks, and have used images and artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the Off-White Marks in order to confuse consumers into believing that such Counterfeit Products are Off-White Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Off-White's adoption and use of the Off-White Marks, after Off-White obtained the U.S. registrations and applied for registrations in the Off-White Marks, as alleged above, and after the Off-White Products became well-known to the purchasing public.

38.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Off-White's ownership of the Off-White Marks, of the fame and incalculable goodwill associated therewith, and of the popularity and success of the Off-White Products, and in bad faith adopted the Off-White Marks.

39.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Off-White's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Off-White, the Off-White Marks and the Off-White Products.

40.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause, confusion, mistake, economic loss, and has and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Off-White, thereby damaging Off-White.

41.     In engaging in these acts, Defendants have, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Off-White: infringed and counterfeited the Off-White Marks; committed unfair competition and unfairly and unjustly profited from such activities at Off-White's expense.

42.     Unless enjoined, Defendants will continue to cause irreparable harm to Off-White.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Trademark Counterfeiting Under Sections 32, 34, and 35 of the Lanham Act,
15 U.S.C. §§ 1114(1)(b), 1116(d), and 1117(b)-(c)))

43.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

44.     Off-White is the exclusive owner of all right and title to the Off-White Marks.

45.     Off-White has continuously used the Off-White Marks in interstate commerce since on or before the date of first use as reflected in its registrations attached hereto as **Exhibit B**.

46.     Without Off-White's authorization or consent, with knowledge of Off-White's well-known and prior rights in the Off-White Marks and with knowledge that Defendants'

Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Off-White Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Off-White Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

47.      Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Off-White, in or affecting interstate commerce, and/or have acted with reckless disregard of Off-White's rights in and to the Off-White Marks through their participation in such activities.

48.      Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Off-White Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Off-White, thereby making substantial profits and gains to which they are not entitled in law or equity.

49.      Defendants' unauthorized use of the Off-White Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or

licensed by Off-White, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Off-White Marks .

50.     Defendants' actions constitute willful counterfeiting of the Off-White Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

51.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Off-White, their business, their reputations and their valuable rights in and to the Off-White Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Off-White has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Off-White and the valuable Off-White Marks.

52.     Based on Defendants' actions as alleged herein, Off-White is entitled to injunctive relief, damages for the irreparable harm that Off-White has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

53.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

54.     Off-White has continuously used the Off-White Marks in interstate commerce since on or before the date of first use as reflected in the registrations attached hereto as **Exhibit B**.

55.     Off-White, as owner of all right, title, and interest in and to the Off-White Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

56.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Off-White is the owner of the federal trademark registrations for the Off-White Marks.

57.     Defendants did not seek, and thus inherently failed to obtain consent or authorization from Off-White, as the registered trademark owner of the Off-White Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Off-White Products and/or related products bearing the Off-White Marks into the stream of commerce.

58.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Off-White Marks and/or which are identical or confusingly similar to the Off-White Marks.

59.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Off-White Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with, the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

60.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Off-White is the owner of all rights in and to the Off-White Marks.

61.     Defendants' egregious and intentional use of the Off-White Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are the Off-White Products or are otherwise associated with, or authorized by, Off-White.

62.     Defendants' actions have been deliberate and committed with knowledge of Off-White's rights and goodwill in the Off-White Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

63.     Defendants' continued, knowing and intentional use of the Off-White Marks without Off-White's consent or authorization constitutes intentional infringement of Off-White's federally registered Off-White Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

64.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Off-White has suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the Off-White Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to Off-White and their valuable Off-White Marks.

65.     Based on Defendants' actions as alleged herein, Off-White is entitled to injunctive relief, damages for the irreparable harm that Off-White has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well

as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**

66.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

67.     Off-White, as the owner of all right, title, and interest in and to the Off-White Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

68.     The Off-White Marks are inherently distinctive and/or have acquired distinctiveness.

69.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the Off-White Marks, and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products, with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are Off-White Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Off-White, and/or that Defendants are affiliated, connected or associated with Off-White, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Off-White Marks to

25

Defendants' substantial profit in blatant disregard of Off-White's rights.

70.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Off-White Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Off-White Marks, Defendants have traded off the extensive goodwill of Off-White and the Off-White Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Off-White.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Off-White and the Off-White Marks, which Off-White has amassed through its nationwide marketing, advertising, sales and consumer recognition.

71.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Off-White Marks would cause confusion, mistake or deception among purchasers, users and the public.

72.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Off-White, its Off-White Products and Off-White Marks.

73.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Off-White by depriving Off-White of sales of their Off-White Products and by depriving Off-White of the value of their Off-White Marks as

commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Off-White and the goodwill and reputation associated with the value of the Off-White Marks.

74.     Based on Defendants' wrongful conduct, Off-White is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Off-White has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Infringement of Unregistered Trademark)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**

75.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

76.     Off-White has continuously used the Off-White C/O Virgil Abloh Word Mark Application in interstate commerce since on or before the date of first use as reflected in the application attached hereto as **Exhibit B**.

77.     Off-White, as the owner of all right, title and interest in and to the Off-White C/O Virgil Abloh Word Mark Application, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

78.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Off-White is the owner of the Off-White C/O Virgil Abloh Word Mark Application.

79.     Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from Off-White, as the trademark owner of the Off-White C/O Virgil Abloh Word

Mark Application, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Off-White Products and/or related products bearing the Off-White C/O Virgil Abloh Word Mark Application into the stream of commerce.

80.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Off-White C/O Virgil Abloh Word Mark Application and/or which are identical or confusingly similar to the Off-White C/O Virgil Abloh Word Mark Application.

81.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Off-White C/O Virgil Abloh Word Mark Application and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

82.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Off-White is the owner of all rights in and to the Off-White C/O Virgil Abloh Word Mark Application.

83.     Defendants' egregious and intentional use of the Off-White C/O Virgil Abloh Word Mark Application in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit

Products are Off-White Products or are otherwise associated with or authorized by Off-White.

84.     Defendants' actions have been deliberate and committed with knowledge of Off-White's rights and goodwill in the Off-White C/O Virgil Abloh Word Mark Application, as well as with bad faith and the intent to cause confusion, mistake and deception.

85.     Defendants' continued, knowing and intentional use of the Off-White C/O Virgil Abloh Word Mark Application without Off-White's consent or authorization constitutes intentional infringement of the Off-White C/O Virgil Abloh Word Mark Application in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

86.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Off-White has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Off-White C/O Virgil Abloh Word Mark Application and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Off-White and its valuable Off-White C/O Virgil Abloh Word Mark Application.

87.     Based on Defendants' actions as alleged herein, Off-White is entitled to injunctive relief, damages for the irreparable harm that Off-White has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Violation of Deceptive Acts and Practices Unlawful)**
**[N.Y. Gen. Bus. Law § 349]**

88.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

89.     Through Defendants' unlawful, unauthorized and unlicensed use of the Off-White Marks on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially similar to the Off-White Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

90.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially misleads, or has a tendency to deceive and materially mislead, the consuming public, and has injured and will continue to injure Off-White's business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

91.     As a result of Defendants' actions alleged herein, Off-White has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

92.     Pursuant to N.Y. Gen. Bus. Law. § 349(h), Off-White is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

### SIXTH CAUSE OF ACTION
### (False Advertising Unlawful)
### [N.Y. Gen. Bus. Law § 350]

93.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.     Without the authorization of Off-White, Defendants have used the Off-White

Marks and/or marks and/or artwork and/or packaging designs that are identical and/or confusingly or substantially similar to the Off-White Marks in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to the Off-White Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

95.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Off-White's business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

96.     As a result of Defendants' actions alleged herein, Off-White has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

97.     Pursuant to N.Y. Gen. Bus. Law. § 350(e), Off-White is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

### SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

98.     Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

99.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Off-White and its Off-White Products to induce, and did induce and intends and will continue to induce, customers to purchase its Counterfeit Products, thereby directly competing with Off-White.  Such conduct has permitted

and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Off-White which Off-White has amassed through its nationwide marketing, advertising, sales and consumer recognition.

100.    Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Off-White's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

101.    Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users, and the public.

102.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Off-White's rights, and for the wrongful purpose of injuring Off-White and its competitive position while benefiting Defendants.

103.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Off-White has been and will continue to be deprived of substantial sales of its Off-White Products in an amount as yet unknown but to be determined at trial, for which Off-White has no adequate remedy at law, and Off-White has been and will continue to be deprived of the value of its Off-White Marks as commercial assets in an amount as yet unknown but to be determined at trial, for

which Off-White has no adequate remedy at law.

104.    As a result of Defendants' actions alleged herein, Off-White is entitled to injunctive relief, an order granting Off-White's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**[New York Common Law]**

105.    Off-White repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

106.    By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

107.    Defendants' retention of monies gained through its deceptive business practices, infringement, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

**PRAYER FOR RELIEF**

**WHEREFORE**, Off-White prays for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Defendants' profits and Off-White's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Off-White's actual damages, enhanced

discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the court considers just, which Off-White may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Off-White's damages in an amount to be proven at trial for willful trademark infringement of their federally registered Off-White Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Off-White's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law. § 349(h);

F.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law. § 350(e);

G.      For an award of damages to be proven at trial for common law unfair competition;

H.      For an award of damages in an amount to be proven at trial for unjust enrichment;

I.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who

receives notice directly or otherwise of such injunction from:

    i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

    ii.   directly or indirectly infringing in any manner any of Off-White's trademarks or other rights (whether now in existence or hereafter created) including, without limitation, the Off-White Marks;

    iii.   using any reproduction, counterfeit, copy or colorable imitation of Off-White's trademarks or other rights (whether now in existence or hereafter created) including, without limitation, the Off-White Marks to identify any goods or services not authorized by Off-White;

    iv.   using any of Off-White's trademarks or other rights (whether now in existence or hereafter created) including, without limitation, the Off-White Marks, or any other marks or artwork that are confusingly or substantially similar the Off-White Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by

Defendants with Off-White, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Off-White;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Off-White;

viii.   engaging in any other act in derogation of Off-White's rights;

ix.   secreting, destroying, altering, removing or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account

is located in the U.S. or abroad) ("Defendants' Financial Accounts") and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

    xi.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

    xii.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action; and

    xiii.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xii) above; and

J.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Off-White for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Off-White's trademarks or other rights including, without limitation, the Off-White Marks, or bear any marks that are confusingly or substantially similar to the Off-White Marks;

K.      For an order of the Court requiring that Defendants deliver up for destruction to Off-White any and all Infringing and/or Counterfeit Products and any and all packaging,

labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Off-White's trademarks or other rights including, without limitation, the Off-White Marks, or bear any marks that are confusingly or substantially similar to the Off-White Marks pursuant to 15 U.S.C. § 1118;

L.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

M.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Off-White;

N.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.      For Off-White's reasonable attorneys' fees;

P.      For all costs of suit; and

Q.      For such other and further relief as the Court may deem just and equitable.

## **DEMAND FOR JURY TRIAL**

Off-White respectfully demands a trial by jury on all claims.

Dated: March 7, 2018                    Respectfully submitted,

                                        EPSTEIN DRANGEL LLP

                                        BY: _____
                                            Mary Kate Brennan (MB 5595)
                                            mbrennan@ipcounselors.com
                                            Spencer Wolgang (SW 2389)
                                            swolgang@ipcounselors.com
                                            Ashly E. Sands (AS 7715)
                                            asands@ipcounselors.com
                                            Jason M. Drangel (JD 7204)
                                            jdrangel@ipcounselors.com
                                            William C. Wright (WW 2213)
                                            bwright@ipcounselors.com
                                            60 East 42nd Street, Suite 2520
                                            New York, NY 10165
                                            Telephone:     (212) 292-5390
                                            Facsimile:     (212) 292-5391

                                            Brian Igel (BI 4574)
                                            bigel@bilawfirm.com
                                            BELLIZIO + IGEL
                                            One Grand Central Place
                                            305 Madison Avenue, 40th Floor
                                            New York, New York 10165
                                            Telephone:     (212) 873-0250
                                            Facsimile:     (646) 395-1585
                                            *Attorneys for Plaintiff*
                                            *Off-White LLC*